Ulysses "Tony" CLARK, Plaintiff,

v.

CITY OF ZEBULON, A Municipal Corporation; and former Mayor Ruth Chandler, Individually and in her official capacity, Defendants.

CITY OF ZEBULON, A Municipal Corporation, Counterclaimant,

v.

Ulysses "Tony" CLARK, Counterclaim Defendant.

No. 3:91–cv–74–GET.

United States District Court, N.D. Georgia, Newnan Division.

Feb. 2, 1993.

Thomas Matthew Rego, Sutton & McCreary, Villa Rica, GA, Michael Weinstock, Alan Robert Heath, Weinstock & Scavo, Atlanta, GA, for Ulysses "Tony" Clark.

John Lewis Sapp, Richard Read Gignilliat, Elarbee Thompson & Trapnell, Atlanta, GA, for City of Zebulon, a Municipal Corp.

Kirby Glenn Atkinson, Boyce Ekonomou & Atkinson, Atlanta, GA, Peter F. Boyce, Boyce Ekonomou & Atkinson, Duluth, GA, for Ruth Chandler.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled matter is presently before the court on (1) the plaintiff Ulysses "Tony" Clark's (Clark) motion for summary judgment on the City of Zebulon's (the "City") counterclaim; (2) the City of Zebulon's cross-motion for summary judgment on its counterclaim; (3) the City of Zebulon's motion for summary judgment on the plaintiff's complaint; (4) the defendant Ruth Chandler's motion for summary judgment on the plaintiff's complaint (5) the plaintiff's mo-

tion to amend; and (6) the plaintiff's motion to extend time to perfect service.

The plaintiff contends that he was first suspended and later terminated from his employment as a patrolman with the City of Zebulon Police Department after he exercised his right to free speech by supporting the defendant, Ruth Chandler's political opponent in the campaign for Mayor of Zebulon.

*Plaintiff's Complaint*

In Counts I through III, the plaintiff alleges causes of action arising under 42 U.S.C. § 1983 for deprivation of his constitutional rights based upon the defendants' conduct in effectuating Clark's termination of employment. Specifically, the plaintiff contends that the defendants' actions violated the following rights guaranteed under both the federal and state constitutions: Count I—freedom of speech; Count II—freedom of association; and Count III—procedural and substantive due process.

The remaining counts in Clark's complaint allege various state law claims as against the defendants. Count IV alleges intentional infliction of emotional distress, Count V alleges (against Chandler only) that Clark's termination amounted to interference with enjoyment of property; Count VI alleges libel and slander by the defendants and finally Count VII alleges interference with business opportunities.

Since the original complaint was filed, the parties have stipulated to a voluntary dismissal without prejudice of Counts VI and VII as against Ruth Chandler in both her official and individual capacity. Therefore, Counts VI and VII remain active only as against the City of Zebulon.

Plaintiff's complaint seeks the recovery of compensatory and punitive damages, reinstatement without suspension, injunctive relief, attorney's fees and further relief as this court deems just, proper and equitable.

*Motions for Summary Judgment*

**Summary Judgment Standard**

Courts should grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must "always bear the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). That burden is "discharged by 'showing'–that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *see also U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991).

Once the movant has met this burden, the opposing party must then present evidence establishing that there is a genuine issue of material fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. The nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, sufficient to demonstrate that if allowed to proceed to trial a jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If he does so, there is a genuine issue of fact that requires a trial. In making a determination of whether there is a material issue of fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513; *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987). However, an issue is not genuine if it is unsupported by evidence or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to create a genuine issue of material fact for trial, the party opposing the summary judgment must come forward with specific evidence of every element essential to his case with respect to which (1) he has the burden of proof and (2)

the summary judgment movant has made a plausible showing of the absence of evidence on the necessary element. *Celotex,* at 323, 106 S.Ct. at 2552.

### A. The Plaintiff's Motion (and the Defendant, City of Zebulon's Cross Motion) for Summary Judgment on the Counterclaim.

After the plaintiff filed his complaint in this action, the City of Zebulon filed its answer and a counterclaim seeking to enforce an oral settlement agreement which was allegedly entered into by the attorneys for the plaintiff and the defendant City. The City claims that this the agreement was a binding resolution of all claims by the plaintiff relating to the suspension and/or termination of the plaintiff's employment. As such, the agreement would settle all allegations of the plaintiff's complaint except those matters addressed in Counts VI and VII which relate to wrongful actions alleged to have occurred after the plaintiff's discharge.

The court has examined the evidence submitted by the parties in light of the summary judgment guidelines and finds the following pertinent facts. Unless indicated otherwise, the facts recited below are undisputed.

*Facts*

In June of 1987, plaintiff was hired as a full-time patrolman for the City of Zebulon's Police Department. Plaintiff was one of four (4) officers working for the city's police department. Throughout his employment with the City of Zebulon, Clark was assigned to the night shift where he worked from 6 p.m. to 6 a.m. either three (3) or four (4) days a week. Plaintiff's job duties included patrolling, checking buildings and residential areas and giving traffic citations.

Ruth Chandler first ran for the position of Mayor of the City of Zebulon in the fall of 1987. In that campaign, one of Chandler's political opponents was Lewis Mack. Clark supported Mack and campaigned openly for Mack in the 1987 election. After Chandler was elected in 1987, she apparently made some overtures about limiting the activities of city employees as it related to city elections. For example, she inquired into forbidding city employees from actively campaigning for candidates for city positions. Apparently nothing ever came of these early efforts by Chandler.

Chandler ran for re-election in the fall of 1989. Again, one of her opponents in this campaign was Lewis Mack and again Clark supported Mack. In fact, in October of 1989, Clark joined an organization known as the Concerned Citizens Group which, among other things, supported and raised money for Lewis Mack. As part of this group, the plaintiff, during his off-duty hours, actively supported Mack in his bid for the position of Mayor, primarily by introducing him to registered voters.

On October 14, 1989, the plaintiff, while on duty, apparently approached a citizen named Mr. Trawick outside Trawick's car in a service station parking lot. Although the plaintiff initially approached Trawick to warn him against speeding within the City limits, Clark ultimately became involved in a verbal altercation with Trawick. Trawick's wife and children were also present at the scene although they were allegedly inside the car at the time. Both Mr. and Ms. Trawick complained to the Police Department both verbally and in writing about Clark's behavior the night of October 14, 1989. In addition, Mrs. Trawick contacted Mayor Chandler to voice her extreme displeasure over the incident, particularly the fact that Clark had used profane language in the presence of the Trawick children.

As a result of the Trawicks' complaints, Johnny Reviere, the Chief of the City of Zebulon's Police Department, (hereinafter "Chief Reviere"), conducted an investigation into the October 14, 1989 incident. As part of the investigation, Reviere instructed Clark to submit a report detailing Clark's version the incident (which Clark did). In addition, Reviere spoke to the Trawicks and took statements from other witnesses to the incident. On December 22, 1989, the plaintiff received a letter from Chief Reviere dated December 20, 1989. The letter indicated that Clark, by his conduct related to the Trawick incident, had violated the following two rules which are set out in the City of Zebulon Police Department Manual:

*Rule 17*

All members of the police department shall at all times be courteous, patient and respectful in dealing with the public. Members shall not use harsh, coarse, profane, insolent, indecent, suggestive, sarcastic or insulting language when talking in public or with the public.

*Rule 62(oo)*

All members of the Police Department are subject to discipline by the Chief of Police or the City Council for committing any of the offenses listed below:

 \* \* \* \* \* \*

(*oo.*) conduct unbecoming an officer which might be detrimental to the service.

Chief Reviere's letter states that due to these violations, Officer Clark was being terminated. Through the letter, Chief Reviere informed Clark of his right to appeal the termination decision and the process by which to institute that appeal.

Despite the wording of the letter to Clark, the City of Zebulon and Ruth Chandler claim that Reviere did not have the authority to terminate Clark. According to the defendants, that authority was vested in the Mayor with a right of approval by the City Council. The plaintiff disputes this assertion and claims that both the Rules and Regulations and the Standard Operating procedure for the City of Zebulon grant this authority to Chief Reviere.

Reviere also claims that he did not have termination authority, apparently contending that his December 20, 1989 letter was merely to inform Clark of Reviere intention to recommend Clark's termination. In fact, at some point in December, Reviere actually did send a handwritten note to the City Manager recommending that Clark be terminated. He followed that note up with a mid-January memo to the City Council, the City Manager and Mayor Chandler, again stating that it was Reviere's opinion that Clark should be terminated. However, there is no evidence that Mayor Chandler or the City Council ever acted to affirm or ratify either of Reviere's recommendations or Reviere's apparent termination of Clark. To the contrary, the record reflects that everyone involved treated Clark as though he had been effectively terminated by Reviere after the December 20th letter.

Also, on December 22, 1989, the plaintiff claims to have received a separate letter from Chief Reviere. The second letter was dated November 13, 1989 and indicated that Reviere was aware that Clark had failed on two separate nights to issue "check slips" to certain businesses in the City of Zebulon. Ordinarily, on the night shift, police officers patrolled the City leaving "check slips" at the premises of various businesses around town. These check slips were meant (1) to reassure business owners that the police were "on the job;" (2) to deter potential burglars; and (3) to help establish the time that any burglaries may have occurred.

The memorandum dated November 13, 1992 accused Clark of failing to issue check slips to various businesses on the evenings of November 2, 1989 and November 12, 1989. The memorandum also indicated that because Clark's failure was a direct violation of previous orders of Mayor Ruth Chandler, Clark would be suspended for a period of three (3) days without pay. This memorandum did not indicate that Clark had any right to appeal Chief Reviere's decision in this regard and Clark claims that he was not otherwise informed of his appeal rights. Clark also contends that he was not given any opportunity to address the charges prior to his December 22, 1989 receipt of the November 13, 1989 memorandum which informed him of his suspension. In this regard, Clark notes that City records reflect that Clark was not scheduled to work and that he did not work on the night of November 2, 1989.

After receiving these two notices, Clark spoke with Chief Reviere who advised Clark that he was being terminated due to both of the occurrences cited in the memoranda. Chief Reviere also told Clark that he had the right to appeal the decisions and to return to work until his appeal was final. However, Reviere later reversed himself on Clark's return to work after Reviere sought advice from the City Attorney, Mack Crawford. Crawford expressed concern that Clark would be presenting himself as a City em-

ployee despite the fact that he had been terminated. Based upon the concerns of Crawford, Reviere wrote a letter to Clark dated December 27, 1989 informing Clark that contrary to what Reviere had said previously, Clark should not return to work until the matter was resolved.

Upon being notified of the City's proposed disciplinary actions, the plaintiff contacted an attorney to represent him in the appeal of the disciplinary actions to be taken against him. That attorney, Chris Edwards, timely notified the City of the plaintiff's intent to appeal both the termination and the suspension. For whatever reason, Clark fired Edwards and in early January 1990, retained Johnnie Caldwell in Edwards' place. Caldwell negotiated with the City of Zebulon to arrange a time for Clark's appeal hearing which was eventually scheduled for February 3, 1990. Caldwell also opened negotiations with Robert "Mack" Crawford, who was the City's attorney, in an effort to settle this case without an appeal hearing.

On February 1, 1990, Caldwell approached Crawford with an offer of settlement. According to Caldwell, his offer had the following four terms:

(1) plaintiff's termination was reduced to a one week suspension without pay;

(2) plaintiff would receive back pay for all missed days except for the one week suspension mentioned in (1) above;

(3) plaintiff would return to the Department as a permanent employee rather than in a probationary status; and

(4) plaintiff would be moved from the night shift to the day shift.

Although at this time, Crawford does not specifically remember the fourth term being a part of the agreement, he does not dispute that it was in fact a term of the agreement. In any event, Crawford accepted Caldwell's offer contingent upon approval by the City Council.

The City Council met in special session later that same day and a motion was made and carried to waive Clark's appeal hearing in order to accept the terms offered by the plaintiff's attorney. However, the minutes also reflect that, later in the meeting, while

discussing when the plaintiff should return to work, the Council stated that he should return to the *night* shift, a provision which is contrary to the alleged terms of the settlement agreement.

After the City Council meeting, Crawford telephoned Caldwell and reported to him that Crawford had discussed Caldwell's terms with the City Council and that the parties had a binding agreement. Caldwell testifies on deposition that Crawford went on to clarify that the City would reinstate Clark and only impose a three-day suspension without pay. Crawford also relayed to Caldwell that, under the agreement, Clark would receive all of the backpay and back benefits due to him; that Clark would be placed on the day shift instead of the night shift; and that Clark would return on permanent rather than probationary status. Caldwell testifies on deposition that when confronted by Crawford's recital, he responded "Accepted."

Although there was no written agreement between the parties, Mayor Ruth Chandler wrote a letter to the plaintiff on February 2, 1990 informing him that he was being placed on one week's suspension, without pay, and that it was the City's understanding that, by accepting the suspension, he was waiving his right to a due process hearing on causation. Chandler also informed Clark that all back pay and benefits missed would be returned to him.

On February 8, 1990, Mayor Chandler wrote a second letter to Clark enclosing a check for the plaintiff's backpay. The letter indicated that the City had included the check in accordance with what the city considered to be a binding settlement agreement between the City and the plaintiff. The letter indicated that Clark was to report for work at 6 a.m. on Sunday February 11, 1990 and that if he chose not to report at that time, he would be terminated as an employee of the City of Zebulon.

On February 9, 1990, the plaintiff sent a letter in which he stated that he would not accept the terms of the settlement and would not return to work. Clark apparently recognized that his attorney had negotiated a settlement with the City, but implied that he should not be bound by its terms since he

had not signed any agreement. It is uncontested that the plaintiff returned the backpay which had been tendered to him by the defendants.

After the plaintiff failed to appear for his shift on Sunday February 11, 1990, the City informed Clark by letter that he was being terminated due to that failure. The letter was written on behalf of the City and was signed by Mayor Chandler. The letter did not inform Clark of his appeal rights and the defendants contend that the plaintiff has not attempted to appeal that termination. Plaintiff contends that he was never afforded an appeal hearing although he demanded such a hearing in a letter dated February 28, 1990 from plaintiff's third (and current) counsel to the defendants.

### 1. Legal Discussion

It is clear that under Georgia law, an attorney has apparent authority to enter into settlement agreements on behalf of his client. *Brumbelow v. Northern Propane Gas Company,* 251 Ga. 674, 308 S.E.2d 544 (1983). Therefore, in the absence of knowledge of express restrictions on an attorney's authority, other settling parties may enforce settlement agreements made by an attorney as against his client. *Id.* 251 Ga. at 674, 308 S.E.2d at 544. This general rule is true even where the party against whom the agreement is being enforced claims that his attorney had no authority to settle the matter. *Id.*

Under Georgia law, a settlement agreement must ordinarily be reduced to writing. *See* O.C.G.A. § 15–19–5. However, where there is no dispute as to either the existence or terms of settlement, then the client will be bound by its terms even in the absence of a writing. *Brumbelow v. Northern Propane Gas Company,* 251 Ga. 674, 308 S.E.2d 544 (1983).

The court has examined the record in the instant case and finds that no genuine issue of material fact exists that (1) a definite, certain and unambiguous settlement agreement existed between Caldwell and Crawford; (2) both attorneys understood their agreement to settle this matter; and (3) the terms of the agreement were as described by attorney Caldwell.

It is clear that in early 1990 Crawford and Caldwell were vigorously negotiating in an attempt to settle this case. Further, it is undisputed that Crawford had no knowledge of any limitations or restrictions placed upon Caldwell's ability to negotiate and bind Clark to any settlement. In fact, Clark does not claim to have placed any such restrictions or limitations upon his attorney. Moreover, neither party disputes that Caldwell approached Crawford on February 1, 1990 with a settlement offer. Caldwell claims that the offer contained the four separate and distinct terms mentioned above and Crawford does not dispute the existence of any of the four terms. Therefore, neither of the parties who allegedly entered into the settlement agreement dispute the purported terms of that agreement. Moreover, both attorneys recollect that Caldwell's proposal was accepted without alteration or modification. Finally, it appears that the City fully complied with its obligations under the terms of the settlement agreement. Based upon the above, it appears that the parties entered into a definite, clear and unambiguous settlement agreement which disposed of Clark's claims against the City of Zebulon arising out of the termination.

Clark now argues that the fact that the City Council's minutes reflect that Clark was to return to the night shift, creates a dispute as to whether an agreement actually existed between the parties. However, there is no indication that Caldwell was made aware of this alleged variation in the terms of his proposed settlement or that it was proposed or even suggested to him as a counteroffer. In fact, Caldwell testifies on deposition that when Crawford called to inform Caldwell that the City had accepted Caldwell's offer, Crawford specifically mentioned all four terms proposed by Caldwell (including the term requiring that Clark would be placed on the day shift) in his acceptance. Moreover, Chandler's February 8, 1990 letter reaffirms that the City understood that Clark was to return on the day shift.

Under these circumstances, this court concludes that no genuine issue of material

fact exists as to the existence or terms of the parties' settlement agreement. Therefore, under Georgia law, the agreement reached between Clark's attorney and the City's attorney is enforceable even though it is not evidenced by a writing. This settlement resolved any liability which might have been charged to the City arising out of the plaintiff's termination. Insofar as a claim against Ruth Chandler in her official capacity is in essence a claim against the city, *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the settlement would also resolve those of plaintiff's claims which arise out of his termination as against Chandler in her official capacity.

Based upon the above, this court concludes that the settlement agreement reached by the parties' attorneys should be enforced by this court. Accordingly, this court hereby DENIES the plaintiff's motion for summary judgment on the defendant's counterclaim; GRANTS the defendant's cross-motion for summary judgment on said counterclaim; and DISMISSES counts I through V of the plaintiff's complaint as against the defendant City of Zebulon and Chandler in her official capacity.

**B. The City of Zebulon's Motion for Summary Judgment on the Plaintiff's Complaint.**

 The above grant of the defendant's cross-motion for summary judgment only disposes of Counts I–V of the plaintiff's complaint as against the City, therefore, the City has also filed this separate motion seeking summary judgment on the remaining counts of the plaintiff's complaint. The City argues that the action should be dismissed in its entirety due to the plaintiff's failure to perfect service within the requisite 120–day period allowed by Federal Rules of Civil Procedure Rule 4(j).

A review of the record reveals that the plaintiff filed the complaint on July 18, 1991, approximately one and one-half years after the events which underlie this action occurred. It is undisputed that shortly after the complaint was filed, the plaintiff attempted to serve process on the City pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii) by mailing copies of the summons and complaint to (then) Mayor Harry B. Rawlins with a copy of a Notice of Acknowledgement of Service Form. It is similarly undisputed that the Notice of acknowledgement of Service Form was never executed or returned to the plaintiff.

Despite the city's failure to acknowledge service, the plaintiff represents that counsel for the City contacted the plaintiff prior to filing any responsive pleading in an effort to determine whether the action could be resolved without the need for an answer. When the settlement negotiations failed, the City sought and received an extension of time in which to file a responsive pleading. Thereafter, the City timely answered the plaintiff's complaint on September 20, 1991. In that answer, the City raised the defenses of lack of jurisdiction, insufficiency of service of process, and insufficient process and asserted a counterclaim against the plaintiff. The City filed an amended answer on October 8, 1991 which again reasserted the above-mentioned defenses and the counterclaim. It is uncontested that since filing its answer, the City has participated in discovery and in drafting submissions to be jointly filed with this court pursuant to governing Local Rules.

Based on the above, the defendant argues that the plaintiff has failed to properly serve the City within 120 days from the day the complaint was filed—that is, by November 15, 1991, and that therefore the plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure Rule 4(j).

Rule 4(j) provides as follows:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action *shall* be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j) (emphasis added).

The plaintiff does not argue that he properly served process within the 120 days provided for in Rule 4(j). In fact, Clark concedes that he failed to do so. Instead, he

raises three other reasons why this court should not dismiss his complaint.

First, Clark argues that his complaint should not be dismissed because the City has waived or should be estopped from raising the issue of improper service of process. It is true that Federal Rule of Civil Procedure 12(h) provides that a defendant can, in certain circumstances, waive the defense of insufficient service of process. Fed.R.Civ.P. 12(h). However, under 12(h) waiver is reserved for a defendant's failure to include the defense in its first responsive pleading. *See* Fed.R.Civ.P. 12(h). Here, the defendant properly reserved the defense in its answer which was its first responsive pleading. Therefore, Rule 12(h) provides no grounds for plaintiff's waiver argument.

However, the plaintiff contends that a defendant can, by actions other than those identified in Rule 12(h), waive the defense of insufficient service of process. In this case, the plaintiff contends that the City engaged in the following conduct which should constitute a waiver of the defense: (1) the City entered into settlement negotiations prior to the filing of a responsive answer; (2) it sought and received an extension of time in which to file its answer without reserving the defense; (3) the City actively participated in discovery after filing its responsive pleadings; and finally (4) the City participated fully with the other parties in the drafting of joint statements to be filed with the court pursuant to the Local Rules.

This court having reviewed the record in this case and the law cited by both parties, finds that none of the above actions constitute a waiver of the defense of insufficient service of process. Here, the defendant clearly reserved the defense in its first responsive pleading. That pleading was filed approximately two months prior to the expiration of the 120–day period and gave the plaintiff clear notice that the sufficiency of service of process was being contested. Moreover, the defendant reiterated the defense in a subsequent amended answer filed October 8, 1991 (over a month and one-half prior to the expiration of the 120–day period). Despite these warnings, the plaintiff did not attempt to perfect service within the time

allowed by Fed.R.Civ.P. 4(j), and, in fact, (according to the defendant City), did not even attempt to discover the basis for the defendant's assertion of the defense.

This court concludes that the fact that the City continued to participate in discovery and in the process of moving the case toward trial does not constitute waiver of the defenses. *See Schnabel v. Wells*, 922 F.2d 726 (11th Cir.1991). Moreover, the fact that the City filed a counterclaim with its answer does not waive the City's defense of improper service of process. *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 (5th Cir.1987); *Wright & Miller*, § 1397, p. 790–792. Instead, this court finds these actions to constitute responsible representation by counsel who keeps its options open and who is proceeding in the interest of both his client and justice. Under the circumstances present in this case, this court finds no waiver of the City's defense of insufficient service of process by the City's actions as described by the plaintiff.

■ The plaintiff next argues that because it properly served Ruth Chandler in her official capacity, it properly served the City. The court finds no merit in this argument. The plaintiff has produced no authority which holds that proper service upon the official constitutes proper service upon the City. This is true even though it is widely recognized that a suit against a City official in his official capacity amounts in essence to a suit against the City. However, the same can be said for the defendant's position on this issue. That is, the defendant has produced no authority for the proposition that improper service upon the City acts to dismiss an "official capacity" suit against a City official where the official has been properly served. In light of the above, the court finds that the propriety of service upon Ruth Chandler and upon the City of Zebulon are separate and distinct questions, neither of which affects the propriety of service upon the other.

■ Finally, the plaintiff argues that good cause exists for his failure to effectuate service within the 120 days. Specifically, the plaintiff argues that good cause exists because he was lulled into not perfecting ser-

vice by the defendant's extensive participation in this action as described above.

The Eleventh Circuit has held that good cause exists "under Rule 4(j) only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence prevented service." *Prisco v. Frank*, 929 F.2d 603, 605 (11th Cir.1991). There has been no showing of good cause here. The plaintiff's attempt to serve the City of Zebulon by mailing the summons and complaint pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii) was indisputably incorrect considering that the City is a municipal corporation (a fact of which the plaintiff was indisputably aware). Service should have been attempted pursuant to Fed.R.Civ.P. 4(d)(6). However, even if service by mail had been appropriate, the City never returned the acknowledgement of service, and, therefore, the plaintiff should have made attempts to serve the defendant by either of the methods prescribed in Fed. R.Civ.P. 4(c)(2)(A) or (B). *See* Fed.R.Civ.P. 4(c)(2)(C)(ii). No such attempt was ever made.

■ Moreover, the defendant City twice notified the plaintiff that service was an issue well in advance of the expiration of the 120–day period. Despite these notifications, the plaintiff failed to perfect service within the requisite time. Because the plaintiff admits that service was not perfected within the 120–day period and because this court finds that good cause has not been shown, dismissal is mandatory pursuant to Rule 4(j) and Eleventh Circuit precedent. *In re Cooper*, 971 F.2d 640, (11th Cir.1992); *Schnabel v. Wells*, 922 F.2d 726 (11th Cir.1991); *Prisco v. Frank*, 929 F.2d 603, 605 (11th Cir.1991). Accordingly, the court GRANTS the City of Zebulon's motion for summary judgment and DISMISSES the plaintiff's complaint in its entirety as against the defendant City of Zebulon.

## C. The Defendant Ruth Chandler's Motion for Summary Judgment on the Plaintiff's Complaint.

Defendant Ruth Chandler has filed a separate motion for summary judgment seeking judgment as a matter of law of each count of the plaintiff's complaint. Plaintiff first addresses the plaintiff's constitutional claims and then the remaining state law claims.

### 1. Constitutional Claims

As to the plaintiff's constitutional claims, the defendant Ruth Chandler raises several grounds which she contends require dismissal.

### a. Causation

■ Chandler first argues that she is entitled to summary judgment on those portions of Clark's complaint which allege violations of constitutional rights by Chandler because Clark cannot show that any action taken by Ruth Chandler was the cause of Clark's termination. Chandler contends that Reviere made the decision to fire Clark primarily as a result of his investigation into the Trawick incident, not as a result of any decision by Chandler.

However, Chief Reviere testified upon deposition that he spoke with Chandler about the Trawick incident, and, that, although she did not directly order him to fire Clark, he understood from her tone of voice, her facial expression and other surrounding circumstances that Chandler wanted Clark fired and that a failure to do so would result in disciplinary action being taken against Reviere. Reviere also testified he felt pressure from Chandler to terminate Clark due to the fact that Chandler repeatedly requested that he find a way to stop Clark from participating in the Concerned Citizens Group and to prohibit Clark from participating in Lewis Mack's campaign. According to Reviere, Chandler's actions and/or positions taken as regards Clark were politically motivated.

From the record, the court finds that the defendant has failed to carry her burden on summary judgment on the issue of causation.

### b. No Constitutional Deprivation

■ Chandler next argues that actions taken by Reviere in terminating the plaintiff do not violate any constitutional rights because those actions were motivated by the Trawick incident. Chandler notes that Reviere admitted on deposition that *at the time* he wrote the memorandum terminating the

plaintiff, Reviere believed that the plaintiff should be terminated based upon Reviere's investigation and that it was not until later that he determined that he may have been mistaken. Chandler seems to imply that because Reviere's memorandum stated that the termination was due to plaintiff's conduct in the Trawick incident, it is undisputed that plaintiff was fired for no reason other than the Trawick incident.

■ However, Reviere's testimony raises a genuine issue of material fact in that regard. The plaintiff may succeed on his Constitutional claims if he can show that conduct that was constitutionally protected provided a substantial or motivating factor in his dismissal. *Ferrara v. Mills,* 781 F.2d 1508 (11th Cir.1986). Therefore, summary judgment is not appropriate.

### c. Qualified Immunity

■ Chandler next seeks to avoid liability in her individual capacity on Counts I through III of plaintiff's complaint pursuant to the doctrine of qualified immunity. Qualified Immunity protects government officials performing discretionary functions from liability for civil damages unless their acts or omissions violate clearly established statutory or constitutional rights of which a reasonable person would have been aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989). Whether a constitutional or statutory right is "clearly established" is a question of law for the court. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

■ In determining whether a particular right is clearly established, a court should look to the law as it stood at the time that the actions complained of actually occurred. Because the law at issue in this case developed from different sources and at different rates, the court will address the First Amendment rights separately from the Fourteenth Amendment rights.

■ Here, Counts I and II deal with alleged violations of the plaintiff's First Amendment rights. It has long been established that a state may not discipline or

terminate a public employee for exercising his First Amendment right to speak freely. *Berdin v. Duggan,* 701 F.2d 909, 913 (11th Cir.) *cert. denied* 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, an employee's right to freedom of speech is not absolute. *Stewart v. Baldwin County Board of Education,* 908 F.2d 1499 (11th Cir.1990). Instead, an employee's freedom of speech is protected under the First Amendment only where it passes the balancing test established in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Specifically, the court must balance the interest of an employee in commenting on matters of public concern against the interests of the employer in performing public services efficiently. *See Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734. Because of the case-by-case nature of the *Pickering* balancing test, the Eleventh Circuit Court of Appeals has held that qualified immunity will always protect an employer *unless* the employee's speech would definitely and necessarily pass the balancing test. *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323–24 (11th Cir.1989); *Stewart v. Baldwin County Board of Education,* 908 F.2d 1499 (11th Cir.1990). This court finds that after applying the balancing test, the employee's speech is entitled to First Amendment protection.

■ The right to support the political candidate of one's choice has always been fundamental to the First Amendment. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Moreover, terminating or dismissing a public employee because he or she supported a political opponent has long been held constitutionally impermissible. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Bennis v. Gable,* 823 F.2d 723 (3rd Cir.1987). Based upon the above, this court finds that a reasonable Mayor would have or should have known in 1989 that the termination of a City employee primarily in retali-

ation for that employee's support of a political opponent would constitute a violation of the First Amendment. Accordingly, defendant Chandler's motion for summary judgment based upon qualified immunity is DENIED as to Count I and II of the plaintiff's complaint.

█ In Count III, the plaintiff alleges that by causing the termination of Tony Clark and by interfering with Clark's right to a termination hearing, Ruth Chandler violated the plaintiff's right to both substantive and procedural due process. As an initial matter, the court notes that the defendant only argues qualified immunity with respect to procedural due process, therefore, the court will only address qualified immunity as it relates to the plaintiff's procedural due process claim.

Chandler does not dispute that the right to procedural due process in termination cases such as the plaintiff's had been clearly established long before 1989 when the acts alleged in the instant suit occurred. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Everett v. Napper,* 833 F.2d 1507 (11th Cir. 1987). Instead, the defendant argues that "there is no evidence that Ruth Chandler in her individual capacity took any action that would constitute conduct denying the plaintiff his right to due process."

However, a review of the record indicates that testimony exists from Chief Reviere to the effect that Chandler used her influence to prevent plaintiff from receiving a post-termination hearing. This testimony raises an issue not suitable to resolution on summary judgment. Accordingly, the court finds that the record reflects at least one genuine issue of material fact on the issue of whether Chandler may be held liable in her individual capacity for a violation of Clark's clearly established procedural due process rights. Accordingly, this court DENIES defendant Chandler's motion for summary judgment based upon qualified immunity as to Count III of the plaintiff's complaint which claims violations of procedural due process.

## 2. All Claims

### a. No discharge

█ Chandler next argues that she is entitled to summary judgment on Counts I–V because under Georgia law the plaintiff was not officially "discharged" in December 1989 and therefore Chandler could not have violated plaintiff's rights in December 1989 as the plaintiff alleges. Although Chandler's argument is somewhat confusing in this regard, the court understands the argument to be essentially as follows: (1) Chief Reviere did not have the authority to fire Clark; (2) therefore Clark was not officially discharged in December 1989 despite the fact that Clark received a letter from Reviere informing him that he had been terminated; (3) in fact, Clark was not discharged until February 1991 when he was terminated for his failure to appear for work in accordance with the terms of the settlement agreement; and (4) because the claims alleged in Counts I–V of the plaintiff's complaint "are grounded on his claims that the Defendants violated his rights under the federal and state constitutions in discharging him *in December 1989* the plaintiff has failed to state a claim as against defendant Ruth Chandler."

To support her argument that Reviere did not have the authority to fire Clark, Chandler points to Section 21.1 of Article V of the City of Zebulon Charter which provides that "the appointment and discharge of personnel shall be the authority of the mayor, but in every case the council shall have the right of approval." Chandler argues that this provision gives the Mayor the exclusive right to discharge any city employee and that therefore Reviere's December 22, 1989 letter informing Clark that he was being terminated did not effect an official termination.

The plaintiff responds that, pursuant to ¶ 62 of the Rules, Regulations and Standard Operating Procedures for the Police Department of the City of Zebulon, Reviere did in fact have the authority to terminate police officers for certain violations of the Police Department rules and regulations and that therefore Reviere's termination letter was effective to discharge the plaintiff.

The defendant replies that to the extent that the rules allow a police chief to dis-

charge City personnel, those rules are in conflict with the City Charter and therefore are invalid pursuant to both the City Charter and O.C.G.A. § 36–34–2.

However, regardless of whether Chief Reviere had the authority to terminate Clark, all of the parties involved clearly accepted the fact that Clark been terminated by Chief ·Reviere in December 1989.

Based upon the circumstances in this case, the court finds that summary judgment is not appropriate since genuine issues of material fact exist as to the issues involved.

### b. Settlement Agreement

■ Chandler next argues that she is entitled to summary judgment in her individual capacity on Counts I–V of the plaintiff's complaint based upon the settlement agreement entered into by Mack Crawford and Johnny Caldwell. However, Chandler has not pointed to any evidence in the record (and the court is unaware of any) that would indicate that Crawford was acting as an attorney for Ruth Chandler in her individual capacity during his negotiations with Caldwell to resolve Clark's claims against the City. Although the court has previously found that Clark's claims against Chandler in her official capacity were resolved by the Crawford/Caldwell settlement agreement, genuine issues of material facts exist as to whether that settlement encompassed claims as against Chandler in her individual capacity. Accordingly, summary judgment is not appropriate.

### 3. State Law Claims

Chandler next addresses the plaintiff's state law claims. These claims lie against Chandler in both her official and individual capacities.

### a. Intentional Infliction of Emotional Distress

■ The State of Georgia recognizes the tort of intentional infliction of emotional distress. However, in order to support such a claim, the plaintiff must show that "the defendant's actions [were] so terrifying or insulting as naturally to humiliate, embarrass

or frighten the plaintiff." *Moses v. Prudential Ins. Co.*, 187 Ga.App. 222, 224, 369 S.E.2d 541, 542 (1988). Otherwise, the defendants' conduct will not rise to the level of outrageousness and egregiousness necessary to sustain a claim. *Yarbray v. Southern Bell Telephone and Telegraph Co.*, 261 Ga. 703, 409 S.E.2d 835 (1991).

■ Here, the plaintiff claims that the defendant's willful disregard of the plaintiff's rights in terminating him less than one week before Christmas amounts to the sort of outrageous conduct necessary to support a claim of intentional infliction of emotional distress. Clark does not contend that either Chandler or Reviere threatened, ridiculed or humiliated the plaintiff when they informed him of his termination. Instead, Clark bases his allegation of outrageous conduct upon the fact that he was terminated without regard to his constitutional rights and without prior notice and despite the defendant's knowledge (1) that being unemployed causes a person stress, frustration and humiliation; (2) that it was more difficult to find a job when one has been terminated from their previous job; and (3) Christmas was only two weeks away.

Given the circumstances of this case and accepting the plaintiff's version of the facts as true, this court finds, as a matter of law, that the defendants' conduct in the termination of plaintiff Clark was not so outrageous, extreme, terrifying or insulting that it rises to the level necessary to sustain a claim of intentional infliction of emotional distress.

Under these circumstances, this court finds that no genuine issue of material fact exists as to the plaintiff's claims of intentional infliction of emotional distress. Accordingly, the court GRANTS the defendant Ruth Chandler's motion for summary judgment on Count IV of the plaintiff's complaint which claims intentional infliction of emotional distress.

### b. Interference with Enjoyment of Property

■ Georgia courts recognize tortious interference with an employment contract even where the employee is an "at will" employee. *Georgia Power Co. v. Busbin,* 242

Ga. 612, 250 S.E.2d 442 (1978); *Favors v. Alco Manufacturing Co.,* 186 Ga.App. 480, 484, 367 S.E.2d 328 (1988). To succeed on such a claim, the plaintiff must show (1) that the defendant was a "third person" who lacks the authority to discharge the plaintiff or to procure the plaintiff's discharge; and (2) that the defendant's interference was willful or malicious, with a desire to injure the plaintiff. *Favors v. Alco Manufacturing Co.,* 186 Ga. App. 480, 484, 367 S.E.2d 328 (1988). Where one's employment was terminable at will and he was discharged by someone with the authority to do so, the motives of the employer are legally immaterial. *Miles v. Bibb Co.,* 177 Ga.App. 364, 339 S.E.2d 316 (1985); *Georgia Power Co. v. Busbin,* 242 Ga. 612, 250 S.E.2d 442 (1978).

■ The defendant first argues that Clark's complaint fails to state a claim in that it fails to allege that Chandler had no authority to procure Clark's discharge, which is an essential element of a cause of action for interference with enjoyment of property under Georgia law. However, the plaintiff filed, contemporaneously with his response to the defendant's motion for summary judgment, a motion to amend his complaint to make this allegation. In light of the fact that the evidence before the court now shows a genuine issue of material fact as to whether Chandler had the authority to terminate Clark, this court finds that the interests of justice require that Clark be allowed to amend his complaint in this way. Accordingly, the court GRANTS Clark's motion to amend his complaint insofar as he seeks to allege that Chandler had no authority to procure Clark's discharge. Based upon this holding, the defendant's argument in this regard must fail.

■ The defendant next argues that Chandler had absolute authority to discharge Clark and that therefore Chandler's motives in effectuating Clark's discharge (assuming she did so) are immaterial. However, under the circumstances present here, this court finds that Chandler has failed to show that she had the absolute authority, without the concurrence of the City Council, to discharge Clark. This is particularly true in light of the fact that the City of Zebulon's Charter provides that "the appointment and discharge of personnel shall be the authority of the mayor, *but in every case the council shall have the right of approval.*" (emphasis provided). It is undisputed that this Charter, as far as it goes, is binding upon the City. In spite of the plain language of the Charter, Chandler argues because she had the ability (1) as Mayor to recommend Clark's termination to the City Council and (2) as a member of the City Council to subsequently to vote on Clark's termination, she should be found as a matter of law, to have absolute authority to discharge Clark. However, Chandler has provided no authority, and the court knows of none, which indicates that exercising the above-mentioned amount of control over an employee is sufficient to give one absolute authority to terminate that employee. In light of the above, this court declines to find, as a matter of law, that Chandler had absolute authority to terminate Clark from employment with the City of Zebulon. *See Georgia Power Co. v. Busbin,* 242 Ga. 612, 250 S.E.2d 442 (1978).

■ As an alternative, Chandler argues that she is entitled to summary judgment even assuming that she caused Clark's discharge when she did not have the authority to do so, because the plaintiff is unable to show that Chandler acted with malice or willfulness in the actions taken against Clark.

However, the court must, for purposes of evaluating a summary judgment motion, take the plaintiff's version of the evidence as true. Keeping this standard in mind, the court has previously held that at least one genuine issue of material fact exists as to whether Chandler acted in disregard of Clark's clearly established constitutional rights. Under these circumstances, the court is unable to say as a matter of law that Chandler did not act with malicious or improper motive in causing Clark's termination. Therefore, this court DENIES the defendant Ruth Chandler's motion for summary judgment on Count V of the plaintiff's complaint.

*Plaintiff's Motion To Amend*

In addressing the defendant Ruth Chandler's motion for summary judgment on

Count V of the plaintiff's complaint, the court GRANTED the plaintiff's motion to amend his complaint insofar as the amendments affected Count V of the plaintiff's complaint. A review of the remainder of the plaintiff's motion to amend reveals that the other proposed amendments would be futile in light of the court's previous rulings on the defendants' motions for summary judgment. Accordingly, the court hereby GRANTS the plaintiff's motion for leave to amend to the extent that it affects Count V of the plaintiff's complaint and DENIES as MOOT the remainder of the motion for leave to amend.

### Plaintiff's Motion to Extend Time to Perfect Service

■ The plaintiff seeks, pursuant to Fed. R.Civ.P. 6(b)(2), an order of this court enlarging the 120–day time period established by Fed.R.Civ.P. 4(j) for service of the summons and complaint upon the City of Zebulon. Federal Rule of Civil Procedure 6(b)(2) provides that a court "for cause shown, may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

■ Here, the plaintiff argues that his failure to act was the result of excusable neglect because (1) he reasonably believed that service of the summons and complaint by mail under Rule 4(c)(2)(C)(ii) upon a municipal corporation was proper and (2) he was lulled into not perfecting service by the defendant's participation in the action. However, this court finds that an attorney's mistake or misunderstanding about the requirements of the Federal Rules of Civil procedure does not constitute excusable neglect. Moreover, as noted above, this court is not convinced that the defendant's participation in the progress of this action should have lulled the plaintiff into believing that the defendant had waived its objections regarding service. This is particularly true where the defendant twice notified the plaintiff of its objections to the sufficiency of service well prior to the expiration of the 120–day period established in Fed.R.Civ.P. 4(j).

Based upon the record, the court's previous discussion on the City of Zebulon's motion for summary judgment and the discussion immediately above, this court finds that the plaintiff's failure to perfect service upon the City of Zebulon is not the result of excusable neglect and therefore declines to enlarge the 120–day time period established for service in Rule 4(j). Accordingly, the plaintiff's motion to extend time to perfect service is DENIED.

### Summary

(1) The court hereby DENIES the plaintiff's motion for summary judgment on the defendant's counterclaim [Docket Item No. 24];

(2) The court hereby GRANTS the City of Zebulon's cross-motion for summary judgment on its counterclaim [Docket Item No. 34] and DISMISSES Counts I through V of the plaintiff's complaint as against the defendant City of Zebulon and defendant Chandler in her official capacity.

(3) The court hereby GRANTS the City of Zebulon's motion for summary judgment [Docket Item No. 33] and DISMISSES the plaintiff's complaint in its entirety as against the defendant City of Zebulon.

(4) The court hereby GRANTS IN PART and DENIES IN PART the defendant Ruth Chandler's motion for summary judgment on the plaintiff's complaint [Docket Item No. 29]. Specifically, the court GRANTS Ruth Chandler's motion for summary judgment on Counts I–V of the plaintiff's complaint as against Ruth Chandler in her official capacity and on Count VI of the plaintiff's complaint as against Ruth Chandler in her individual capacity. The court DENIES Chandler's motion in all other respects.

(5) The court hereby GRANTS the plaintiff's motion for leave to amend [Docket Item

No. 44] to the extent that it affects Count V of the plaintiff's complaint and DENIES as MOOT the remainder of the plaintiff's motion for leave to amend.

(6) The court hereby DENIES the plaintiff's motion to extend time to perfect service [Docket Item No. 45].

SO ORDERED.