Marlene H. ASPINWALL, Collice F. Brannen, Sr., Jesse H. Brantley, Earl Callaway, John G. Carter, Pauline Dart, Jerry W. Dowling, James C. Grant, Vicky H. Greatheart, Curtis A. Hand, Michael E. Hargrove, Raymond House, II, Dale B. Lamb, Daniel G. Leger, Ollie O. McGahee, III, Joseph Naia, Carlton M. Spell, Keith C. Wright, Plaintiffs,

v.

David HERRIN, in his official capacity as Sheriff of Wayne County and Individually, and Kenny Poppell, as Deputy Sheriff of Wayne County and Individually, Defendants.

Civ. A. No. 293–6.

United States District Court,
S.D. Georgia,
Brunswick Division.

Dec. 27, 1994.

James Allen Chamberlin, Jr., Brunswick, GA, O. Hale Almand, Jr., Macon, GA, for plaintiffs.

Terry Lee Readdick, Richard K. Strickland, Brunswick, GA, for defendants.

### ORDER

ALAIMO, Senior District Judge.

On January 12, 1993, Plaintiffs brought this federal question action under 42 U.S.C. § 1983 against Defendants, David Herrin ("Herrin") and Kenny Poppell ("Poppell"), in both their individual and official capacities. Plaintiffs are former and current Wayne County Deputy Sheriffs who claim they were wrongfully terminated from their jobs by Herrin when he became Sheriff of Wayne County. Herrin is the Sheriff of Wayne County and Poppell is a deputy sheriff.

Title 42 U.S.C. § 1983 provides a civil action for persons claiming violations of their rights secured by either the Constitution or by federal laws, "broadly encompass[ing] violations of federal as well as constitutional law." *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).[1]

Plaintiffs allege that Herrin denied their property rights and liberty interests in continued employment in violation of due process under the Fifth and Fourteenth Amendments to the United States Constitution, violated their First Amendment rights of free speech and freedom of association, committed intentional infliction of emotional distress, tortiously interfered with their employment contracts, and retaliated against Plaintiffs because of their involvement in this lawsuit. Plaintiff, Daniel G. Leger ("Leger"), alleges that both Herrin and Poppell violated his right to privacy by Poppell's warrantless search of Leger's residence. Plaintiffs seek back pay, compensatory and punitive damages, attorneys' fees and expenses.

This case is presently before the Court on Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, summary judgment for Defendants will be **GRANTED** in part and **DENIED** in part.

### FACTS

Sheriffs in Georgia are constitutional officers, and have traditionally held the sole power to hire and fire deputies. O.C.G.A. § 15–16–23 states that "[s]heriffs are authorized in their discretion to appoint one or more deputies." In 1983, the Georgia Constitution was amended to authorize the creation of county civil service systems, which may apply to employees of elected county officials, including sheriffs.[2] In 1988, the Wayne County Board of Commissioners (the "Board") created a county civil service system which applied to all employees of the

---

1. Section 1983, in pertinent part, provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. § 1983.

2. O.C.G.A. § 36–1–21 reads:

   (a) The governing authority of any county is authorized to provide by ordinance or resolution for the creation of a civil service system for employees of the county, other than.elected officials or persons appointed to positions for specified terms.

   (b) Subsequent to the creation of a civil service system, the county governing authority which created the system may provide by ordinance or resolution that positions of employment within departments subject to the jurisdiction of elected county officers ... shall be subject to and covered by the civil service system upon the written application of the elected county officer ... having the power of appointment, employment, or removal of employees of the officer.... Once positions ... are made subject to the civil service system, such positions shall not be removed thereafter from the coverage of the civil service system.

   (c) A civil service system created pursuant to the authority of this Code section shall be administered in such manner and pursuant to such rules and regulations as may be provided for by resolution or ordinance of the county governing authority which created the system.

Sheriff's Department, and permitted termination only for cause.[3]

Plaintiffs were employees of the Wayne County Sheriff's Department under Sheriff Warren. They were all sworn deputy sheriffs, working in various positions. Specifically, Plaintiffs, Marlene H. Aspinwall ("Aspinwall") and Dale B. Lamb ("Lamb"), were secretaries; Plaintiff, Collice F. Brannen, Sr. ("Brannen"), was a bailiff; Plaintiffs, Jesse H. Brantley, Jerry W. Dowling, Michael E. Hargrove, Raymond House, II, and Keith C. Wright were road deputies; Plaintiff, Earl Callaway ("Callaway") was a detective; Plaintiff John G. Carter ("Carter") was chief deputy; Plaintiffs, Pauline Dart ("Dart"), James C. Grant ("Grant") and Carlton M. Spell ("Spell"), were detention officers; Plaintiff, Vicky H. Greatheart ("Greatheart"), was assistant jail administrator; Plaintiff, Curtis A. Hand ("Hand"), was chief jail administrator; Leger was an undercover drug officer; Plaintiff, Ollie O. McGahee ("McGahee"), was a road deputy and D.A.R.E. (school anti-drug program) officer; and Plaintiff, Joseph Naia ("Naia"), was chief detective.

In 1992, Herrin ran for Sheriff of Wayne County. He defeated then-Sheriff Warren in the Democratic primary, and went on to win the general election. Plaintiffs either supported Sheriff Warren or remained neutral in the election. Carter made a radio commercial supporting Sheriff Warren, Greatheart went door to door with Sheriff Warren's campaign literature, Brannen campaigned for Sheriff Warren, and Dart helped mail campaign literature for Sheriff Warren.

After his election, Herrin was informed by county attorney, Mac Hall, and County Administrator, Joe Pritchard, that the Sheriff's Department was subject to the Wayne County personnel policy and that employees could only be terminated for cause. Herrin indicated to the Board that he would not retain all of Sheriff Warren's employees. Herrin did not believe the merit system applied to the Sheriff's Department. He also stated in the press that he would carry out his campaign promise of change in the Sheriff's Department, including the use of lie detector tests and drug and alcohol screenings on old and new employees. (Wayne County Press Sentinel, Dec. 30, 1992).

Many Sheriff's Department employees became concerned about losing their jobs. Thirteen employees, all of them Plaintiffs in the instant case, contributed money to a "legal fund," planning to enforce their rights under the merit system if terminated.

On January 1, 1993, Herrin took office as Sheriff of Wayne County. He notified each of the 18 Plaintiffs in writing that he or she was not being reappointed as a deputy sheriff. Herrin gave no reason for termination in any letter. He subsequently commented that he was replacing those who he did not believe did a good job under Sheriff Warren, (Savannah News, January 4, 1993), and that there were several employees "he couldn't trust or work with." (Savannah News, January 9, 1993). He also asked anyone to contact him who had knowledge of missing Sheriff's Department items, including pistols and walkie-talkies. (Wayne County Press Sentinel, January 24, 1993).

On January 8, 1993, Deputy Sheriff Poppell was asked by Sheriff Herrin to locate Leger. Leger was an undercover drug officer in the Sheriff's Department. Poppell and Herrin contend they were looking for Leger out of concern for his well-being. Leger had not been seen since December 24th or 25th, had not reported to a meeting on January 1,

3. The following facts come from the Order of the Georgia Court of Appeals:

The Board adopted Wayne County's current personnel system on December 6, 1988. On December 29, 1988, the same day he was sworn into office for his term beginning on January 1, 1989, the previous sheriff of Wayne County, James E. Warren, requested that the positions of chief deputy, secretary, chief detective, detective, deputy sheriff, sergeant, and detention officer be subject to and covered by the personnel system. On December 18, 1992, the Board adopted a resolution authorizing elected officials to bring their employees into the personnel system, and on December 28, 1992, Sheriff Warren, whose term was to expire on December 31, 1992, renewed his request first made in December 1988 that the above-mentioned positions in the sheriff's department be made a part of the personnel system.

*Wayne Co. v. Herrin,* 210 Ga.App. 747, 747–48, 437 S.E.2d 793 (Ga.Ct.App.1993), *cert. denied* January 28, 1994 (footnotes omitted).

1993, and did not answer his telephone, pager, or cellular phone. Leger argues that Poppell and Herrin only sought to recover any Sheriff's Department property Leger might have. Poppell did not check Leger's personnel file, which indicated that Leger had been granted leave, and did not contact Leger's supervisor, former Sheriff Warren, the County Administrator, or Leger's family concerning his whereabouts.

Poppell went to Leger's apartment, where the manager confirmed that Leger had not been seen for some time, and that his car had not been moved. After calling the owner of the apartments, Poppell and the manager entered Leger's apartment. The parties dispute whether Poppell told the manager and owner that he was concerned for Leger's well-being, and whether Poppell said he would get a search warrant, if necessary.

After determining Leger was not present in the apartment, Poppell removed several items belonging to the Sheriff's Department and left the premises. Herrin later instructed Poppell to return the items, which he did. Poppell and Herrin contend the items were taken back to the apartment so that Leger could return all Sheriff's Department property at one time. Leger, on the other hand, believes that Herrin and Poppell contacted the District Attorney, learned that they could not take the items without permission or a search warrant, and then decided to return the items.

On January 4, 1993, Plaintiffs filed grievances with the County Administrator objecting to their termination. On January 6, 1993, Wayne County filed suit in Wayne County Superior Court against Sheriff Herrin and his newly appointed deputies, seeking to return the Plaintiffs to work and to terminate the new deputies. Wayne County continued to pay all Plaintiffs their regular salary while they worked at different County jobs.

Some Plaintiffs obtained other employment. Aspinwall worked briefly for the County, then worked at Belk's department store and an attorney's office. Leger went to work for the Savannah Police Department on March 1, 1994. McGahee became a Wayne County Probation Officer. Spell

worked for the City of Jesup Police Department. Grant had a heart attack on August 6, 1993, and was unable to work. He was paid by the County until May, 1994.

Callaway, Naia, Hand and Greatheart were placed by Wayne County in either the District Attorney's or Solicitor's office. On July 6, 1993, Herrin sent letters to the District Attorney and Solicitor stating that the Sheriff's Department would not "recognize or work with any members of the old Sheriff's staff that you have employed with you."

Judge Taylor of the Wayne County Superior Court held that Sheriff Herrin "acted within his authority under Georgia law in failing to re-appoint certain employees of the Wayne County Sheriff's Office upon his assumption of office." *Wayne Co. v. Herrin,* Wayne County Superior Court, Civil Action No. 93–CV–0009, Order of February 2, 1993. The Georgia Court of Appeals reversed Judge Taylor's ruling and found that Herrin was bound by the provisions of the Wayne County personnel system. On February 25, 1994, Judge Taylor ordered that Plaintiffs be reinstated.

Only three Plaintiffs did not return to work at the Sheriff's Department. Grant had suffered a heart attack and was unable to work. Leger took a job with the Savannah Police Department, and McGahee was working as a Probation Officer. Lamb subsequently resigned from the Sheriff's Department on June 30, 1994.

## DISCUSSION

### I. *Summary Judgment*

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1532 (11th Cir.1994). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992).

## II. *Constitutionality of O.C.G.A. § 36–1–21*

Defendants argue that O.C.G.A. § 36–1–21 violates Art. 9, § 1, par. 2 of the Georgia Constitution, because it allows county governing bodies and constitutional officers to bind future constitutional officers to their predecessor's choice of · employees. The Court will not consider this argument because the Georgia Court of Appeals and Supreme Court declined to rule on the constitutional challenge in *Wayne Co. v. Herrin.*

## III. *Procedural Due Process Claims*

To maintain an action under 42 U.S.C. § 1983, Plaintiffs must make a prima facie showing that "the act or omission of a person acting under color of state law deprived plaintiff[s] of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Meredith v. Grogan*, 812 F.Supp. 1223, 1228 (N.D.Ga.1992), *aff'd* 985 F.2d 579 (11th Cir.1993) (quoting *Cannon v. Taylor*, 782 F.2d 947, 949 (11th Cir.1986)).

In Count I of their Complaint, Plaintiffs assert that their rights to procedural due process were violated by their termination without a hearing and by the publication of derogatory statements about their discharge without opportunity for a name-clearing hearing. In order for there to be a violation of due process, the plaintiff must first be deprived of a liberty or property interest. Then, the procedure under which the deprivation occurred must be constitutionally insufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548

(1972) and *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983)).

### A. Property Right in Employment

State law may create a property interest in employment if there are "rules or mutually explicit understandings that support [a] claim of entitlement." *Warren v. Crawford*, 927 F.2d 559 (11th Cir.1991) (quoting *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)). A public employee who may be terminated only for cause has a property interest in continued employment. *Nolin v. Douglas Co.*, 903 F.2d 1546, 1553 (11th Cir.1990). The Georgia Court of Appeals in *Wayne Co. v. Herrin* found that the employees dismissed by Herrin were covered by the Wayne County personnel system and, therefore, had a property interest in their employment. 210 Ga.App. at 755, 437 S.E.2d 793. Plaintiffs correctly assert that their termination without a hearing violates procedural due process. Herrin, however, has raised the defense of qualified immunity to Plaintiffs' claim.

#### 1. *Qualified Immunity*

The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Stough v. Gallagher*, 967 F.2d 1523, 1525 (11th Cir. 1992), *reh'g denied* 978 F.2d 718 (11th Cir. 1992). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738. This test is now called the "objective reasonableness" standard. *Stough*, 967 F.2d at 1525.

In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court clarified the *Harlow* test by rendering it more fact-specific. The Court in

*Anderson* stated that the "contours of the [constitutional] right [in question] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039.

The Eleventh Circuit recently held:

> Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.

*Lassiter v. Alabama A & M University, Bd. of Trustees,* 28 F.3d 1146, 1149 (11th Cir. 1994) (citing *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994) (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)).

In the Eleventh Circuit the "objective reasonableness" standard is applied through a two-part analysis:

> (1) The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'
>
> (2) Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional laws.'

*Stough,* 967 F.2d at 1526 (quoting *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir. 1988)).

### a. Discretionary Authority

First, Herrin must prove that terminating the Plaintiffs' employment was within the scope of his discretionary authority.

A government official proves that he acted within the purview of his discretionary authority by showing "objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."

*Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992) (quoting *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir. 1990)); *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)). Plaintiffs do not dispute that Herrin was acting within the scope of his discretionary authority when he terminated Plaintiffs' employment.

### b. Clearly Established Law

Since Herrin's actions were within the scope of his discretionary authority as Sheriff, the burden shifts to Plaintiffs to show that Herrin's actions violated clearly established constitutional laws. "To avoid qualified immunity, plaintiffs in this case must point to pre-existing law which 'dictates' and 'compels' the conclusion" that the defendants' specific actions violated clearly established federal rights. *Alexander v. University of North Florida,* 39 F.3d 290, 291 (11th Cir.1994).

The Eleventh Circuit uses an extremely fact-specific, bright line standard in determining whether a law was "clearly established" at the time a defendant acted. It is without question that employees covered by a county merit system have a property interest in continued employment. The appropriate question in this case is whether, in January of 1993, it was clearly established in Georgia that a Sheriff, a constitutional officer empowered to hire and fire his deputies at will, could be bound by a county merit system adopted by a previous Sheriff and the county Board of Commissioners requiring that deputies be terminated only for cause.

Plaintiffs have failed to show that the law was clearly established in this area. The two Georgia cases relied upon by Plaintiffs do not attempt to reconcile the powers of a sheriff with the provisions of a county merit system. Neither do the cases discuss the constitution-

ality of O.C.G.A. § 36–1–21 as applied to a Sheriff's employment of deputies. *Floyd v. Chaffin,* 201 Ga.App. 597, 411 S.E.2d 570 (Ga.Ct.App.1991); *Burbridge v. Hensley,* 194 Ga.App. 523, 391 S.E.2d 5 (Ga.Ct.App.1990), *cert. denied,* April 5, 1990.

In *Floyd,* the court held that a deputy sheriff was not covered by a county employment policy because no resolution had been passed making employees of the Sheriff subject to the policy. In *Burbridge,* the court found that an employee of the Sheriff's Department was not covered by the county civil service system because no enabling ordinance allowing the Sheriff to apply for coverage had been passed. The court in *Burbridge* stated explicitly: "we need not reach the issue of the constitutionality of O.C.G.A. § 36–1–21." *Id.* 391 S.E.2d at 7.

Plaintiffs make much of the fact that Herrin was warned by the County Attorney and County Administrator that Plaintiffs were covered by the Wayne County employment policy and could only be terminated for cause. While this conclusion turned out to be correct, the County had no more reliable basis for its belief *at that time* than did Herrin for his belief that the employment policy could not be constitutionally applied to a Sheriff. *Wayne Co. v. Herrin* was the first case to reconcile the entitlements of a county civil service system with the right of a sheriff to hire and fire deputies.

Herrin is entitled to qualified immunity on Plaintiffs' claim because it was not clearly established in January of 1993 that a Georgia sheriff was bound by a county merit system. Thus, it was not clearly established that Plaintiffs, as employees of the Sheriff, had a property interest in their jobs. The state of the law was such that a reasonable public official in Herrin's position would not have known that what he was doing was a violation of federal law. Herrin's motion for summary judgment on Plaintiffs' claim for termination of their employment without a hearing will be **GRANTED.**

## B. Liberty Interest

■ Plaintiffs also allege that Herrin made derogatory statements in the press about them as Sheriff's Department employees who were not reinstated.

> [T]he dismissal of a government employee accompanied by a "charge against him that might seriously damage his standing and associations in the community" ... trigger[s] the due process right to a hearing at which the employee could refute the charges and publicly clear his name.

*Lovell v. Floyd County,* 710 F.Supp. 1364, 1373 (N.D.Ga.1989) (citations omitted). In order to establish a deprivation of a liberty interest without due process of law, Plaintiffs must show:

> (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for [an] employee name clearing hearing.

*Warren v. Crawford,* 927 F.2d 559, 565 (11th Cir.1991) (quoting *Buxton v. City of Plant City, Fla.,* 871 F.2d 1037, 1042–43 (11th Cir. 1989)). The mere fact of being discharged, regardless of the reason, is not a deprivation of liberty. *Clemons v. Dougherty County, Georgia,* 684 F.2d 1365, 1371 (11th Cir.1982).

■ Plaintiffs concede that Herrin's statements in the press were not directed at any individual plaintiff. They contend, however, that the *innuendo* created by the statements was false and implicated all Plaintiffs as untrustworthy, intoxicated at work, and responsible for missing county property.

Plaintiffs have failed to show any evidence that the statements which appeared in the newspaper were false. The statements which Plaintiffs claim imply wrongdoing appear to be straightforward comments by Herrin about his new administration. Herrin stated that alcohol and drug screenings and lie detector tests would be given randomly to employees throughout his term. He said "I don't think a man should report to work intoxicated. In other words, I won't tolerate it." Herrin said he would replace those he did not believe did a good job under Sheriff Warren, and that there were several employees "he couldn't trust or work with." Herrin also asked that anyone contact him who had information about missing equipment.

Perhaps these statements, when enlarged by gossip in the community, were the basis for speculation on Plaintiffs' termination. This is not enough to demonstrate that the statements themselves were false. *Warren v. Crawford*, 927 F.2d at 565.

Callaway, Naia, Hand and Greatheart also contend that the letter sent by Herrin to the District Attorney and Solicitor, stating that the Sheriff's Department refused to work with these four Plaintiffs, constituted a deprivation of a liberty interest. Again, Herrin made no false statement in this letter.

Plaintiffs have shown no objectively false statements by Herrin. They have failed to demonstrate the existence of a genuine issue of material fact on an essential element of their case. Summary judgment for Herrin on Plaintiffs' claim for violation of their liberty interest will be **GRANTED.**

## IV. *Substantive Due Process Claims*

In Count II of the Complaint, Plaintiffs assert that they were deprived of a property right in employment without substantive due process of law. Until recently, a public employee's right to substantive due process was violated when he was deprived of his property interest in employment for pretextual or arbitrary and capricious reasons. *Narey v. Dean*, 32 F.3d 1521, 1526 (11th Cir.1994).

In 1994, however, the Eleventh Circuit held in *McKinney v. Pate* that an allegation of wrongful termination in violation of a state-created property right in employment "implicates procedural—and not substantive—due process protection." 20 F.3d 1550, 1561 (11th Cir.1994), *petition for cert. filed,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1994); *see Tindal v. Montgomery Co. Commission*, 32 F.3d 1535 (11th Cir. 1994), *reh'g denied,* 42 F.3d 646 (11th Cir. 1994). Rights created by state law are not subject to substantive due process protection. "[S]ubstantive due process rights are created only by the Constitution." *McKinney* at 1556 (quoting *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 515, 88 L.Ed.2d 523 (1985) (Powell, J., concurring)). The holding in *McKinney* applies retroactively. *Id.* at 1566.

The Court notes that Plaintiffs' substantive due process claims arising out of their First Amendment rights are not affected by *McKinney*. First Amendment rights are not state-created, but are fundamental constitutional rights. *McKinney*, 20 F.3d at 1556.

Summary judgment for Herrin will, therefore, be **GRANTED** on Plaintiffs' claims for violation of their substantive due process rights based on a state-created property interest in employment.

## V. *First Amendment Claims*

Plaintiffs allege in Count III of the Complaint that their termination by Herrin violated their First Amendment rights of free speech and freedom of association. Plaintiffs contend that they were fired because they did not actively support Herrin's candidacy, because they spoke out in favor of another candidate, and because they contributed money to a legal fund to oppose their termination. They also claim that Herrin has retaliated against those Plaintiffs currently working in the Sheriff's Department because of their involvement in this lawsuit.

Public employment cannot be conditioned "on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983).

> A public employee's protection is not absolute, however. The court must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Lovell v. Floyd Co.*, 710 F.Supp. at 1374 (quoting *Pickering v. Bd. of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)). The courts have distinguished two types of cases in which a public employee's discharge implicates First Amendment rights: those involving employee expression, and those resulting from "raw political patronage." *Terry v. Cook*, 866 F.2d 373, 375 (11th Cir.1989).

## A. Political Patronage

■ First Amendment political patronage cases differ from traditional freedom of expression/freedom of association cases because the employee's "action" which results in discharge may be nothing more than failure to support the winning candidate. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (state employees discriminated against in employment because not members of the Republican Party). Public employment in these cases is conditioned "upon political allegiance and not upon the content of expressions of political beliefs." *Terry,* 866 F.2d at 377.

Plaintiffs allege that they were fired by Herrin because they did not actively support his candidacy, either because they chose not to become involved in the campaign, or because they supported another candidate. Herrin has asserted the defense of qualified immunity to Plaintiffs' claims.

### 1. *Qualified Immunity*

As discussed above, Herrin has met his burden of showing that he acted within the scope of his discretionary authority when he did not reappoint Plaintiffs each to the position of deputy sheriff. Under the objective reasonableness standard for qualified immunity, Plaintiffs have the burden of proving that Herrin's actions violated clearly established constitutional law.

Courts use the *Elrod–Branti* analysis in determining if patronage discharges are constitutional. A court, in balancing the need for effective government with individual rights, determines "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). The Supreme Court has held that party affiliation is an appropriate job requirement only for confidential or policymaking positions within government. *Elrod v. Burns,* 427 U.S. 347, 372, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976) (affirming issuance of preliminary injunction when sheriff's department employees discharged because not affiliated with Democratic Party); *Branti,* 445 U.S. at 518,

100 S.Ct. at 1294–95 (finding assistant public defender's employment is not properly conditioned on allegiance to political party, since job is to represent individual citizens in controversy with state).

In *Terry,* the Eleventh Circuit applied the *Elrod–Branti* analysis to a newly-elected sheriff's refusal to reappoint any of his predecessor's employees. 866 F.2d at 377–379. The *Terry* court stated:

> The closeness and cooperation required between sheriffs and their deputies necessitates the sheriff's absolute authority over their appointment and/or retention.
>
> Under the *Elrod–Branti* standard, loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement for the effective performance of a deputy sheriff. Such a requirement strikes at the heart of the *Elrod–Branti* least restrictive means test which balances first amendment rights of the deputies and the need for efficient and effective delivery of public services. We can find no less restrictive means for meeting the needs of public service in the case of the sheriff's deputy than to acknowledge a sheriff's absolute authority of appointment and to decline to reinstate those who did not support him.

*Id.* at 377.

The court found, however, that employees who were not deputy sheriffs (holding the positions of clerk, investigator, dispatcher, jailer and process server) might be able to show that political loyalty to the sheriff was not a necessary requirement of their jobs. *Id.* at 378. The basis for the *Terry* court's decision was the fact that, under Alabama law, a deputy sheriff is the alter ego of the sheriff. The sheriff may be civilly liable for the actions of his deputy.

As the Court stated previously, in January, 1993, it was not clearly established that a Georgia sheriff was bound by a county merit system. A reasonable public official in Sheriff Herrin's position could believe that, as in *Terry,* a Georgia sheriff was fully responsible for the acts of his deputies and thus had "absolute authority ... to decline to rein-

state those who did not support him."[4] Summary judgment for Herrin on the basis of qualified immunity will be **GRANTED** on Plaintiffs' claim of political patronage dismissal.

### B. Freedom of Expression

Plaintiffs also allege that they were terminated because they spoke out in support of Sheriff Warren during the campaign. Herrin raises two defenses to this claim. First, he argues that the Plaintiffs did not engage in any "speech" protected by the First Amendment. Second, he asserts the defense of qualified immunity.

#### 1. *Protected Speech*

Cases involving political speech rather than pure patronage dismissals "require the open-ended inquiry or method of analysis the Supreme Court established in *Pickering*." *Stough v. Gallagher*, 967 F.2d 1523, 1527 (11th Cir.1992). *Pickering* requires

"a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

*Connick v. Myers*, 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Bd. of Education*, 391 U.S. at 568, 88 S.Ct. at 1734).

■ The Eleventh Circuit has developed a more detailed four-part test to determine whether an employer's action constitutes retaliation for protected speech in violation of the First Amendment. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565–66 (11th Cir. 1989), *reh'g denied*, 894 F.2d 414 (11th Cir. 1990). The first part of the *Bryson* test asks if the speech is on a matter of public concern. The second part of the test asks if the employee's interest in his speech outweighs the state's interest in promoting efficient public service. The third part of the test asks whether the employee's speech played a sub-

stantial role in the employee's termination. The fourth part of the test asks if the employee would have been terminated, regardless of the protected speech. *See Tindal v. Montgomery Co. Commission*, 32 F.3d 1535, 1539–40 (11th Cir.1994).

Herrin contends that Plaintiffs did not engage in any speech in a manner which raises a First Amendment claim. Aspinwall, Callaway, and Leger admit that they did not speak to anyone about which candidate they supported in the election. Obviously, they cannot assert that they spoke out on a matter of public concern. Their claims fail the first step of the *Bryson* test.

■ On the other hand, Carter and Greatheart engaged in public campaign activities. Carter appeared in a radio commercial for Sheriff Warren and displayed a yard sign supporting him. Greatheart went door-to-door campaigning for Sheriff Warren. The remaining Plaintiffs spoke informally about their support of Sheriff Warren. Speech concerning candidates for public office addresses the most elemental of all public concerns, *Stough*, 967 F.2d at 1527, and is certainly within the scope of First Amendment protection.

#### 2. *Qualified Immunity*

■ Herrin has satisfied the first prong of the objective reasonableness test for qualified immunity. The burden is thus on Plaintiffs to show that Herrin's alleged actions violated clearly established law.

Qualified immunity in speech cases, because of the balancing test used, is extremely fact-specific. The Eleventh Circuit has held that

[b]ecause no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that

---

4. The fact that some Plaintiffs held positions that the *Terry* court stated might not require personal political loyalty is not relevant, since all Plaintiffs were also deputy sheriffs. "Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided

cases." *Hansen v. Soldenwagner*, 19 F.3d 573, 575 (11th Cir.1994) (quoting *Adams v. St. Lucie Co. Sheriff's Dept.*, 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), *vacated by* 982 F.2d 472 (11th Cir.1993), *approved en banc*, 998 F.2d 923 (11th Cir.1993)).

the discharge of the employee was unlawful.

*Stough,* 967 F.2d at 1528 (quoting *Dartland v. Metropolitan Dade Co.,* 866 F.2d 1321, 1323 (11th Cir.1989)).

In *Stough,* the court found that a sheriff's demotion of a deputy sheriff who campaigned and made speeches during off-duty hours for the sheriff's political opponent violated clearly established First Amendment law. One basis for the court's finding, however, was that the sheriff had adopted a "Career Service Policy and Procedure" which established that personal political loyalty to the sheriff was not a prerequisite for the job at issue.

As discussed earlier in this opinion, it was not clearly established in January, 1993, that Sheriff Herrin could not require personal political loyalty of his deputies. Thus, it was not a foregone conclusion at that time that the Plaintiffs' interest in speaking outweighed the state's interest in efficient public service. This is not a case with the "inevitable conclusion" that Plaintiffs' discharge was unlawful.[5] A reasonable public official in Herrin's position could have believed that his actions were lawful. Summary judgment for Herrin on the basis of qualified immunity will be **GRANTED** on Plaintiffs' speech claims.

### C. Freedom of Association

Plaintiffs assert that they were terminated because they contributed money to a legal fund and that they have been retaliated against since returning to work because of their involvement in this litigation. These claims are properly characterized as First Amendment freedom of association claims. *Pickering* balancing is used to determine if a public employee was fired for a reason which infringes on his constitutionally protected freedom of association. *Wilson v. Taylor,* 658 F.2d 1021 (5th Cir. Unit B 1981);[6] *see McCabe v. Sharrett,* 12 F.3d 1558 (11th Cir. 1994) (debating, without reaching conclusion, relative merit of applying *Pickering* or *El-*

*rod–Branti* analysis to associational claims). It is not required, however, that the associational activity at issue relate to a matter of public concern. *Hatcher v. Bd. of Public Education and Orphanage for Bibb Co.,* 809 F.2d 1546, 1558 (11th Cir.1987). A public employee "can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so." *Id.* (quoting *Smith v. Arkansas State Hwy. Employees, Local 1315,* 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979)).

These associational claims have not been extensively briefed by the parties. The Court will address them, however, since they arise from facts similar to those of the other First Amendment claims.

#### 1. Termination for Joining Legal Defense Fund

Thirteen Plaintiffs contributed money to an informal legal defense fund in December, 1992, when they realized that Herrin might not reappoint some Sheriff's Department employees. Plaintiffs have failed to introduce any evidence that Herrin knew this fund existed or knew who had contributed money to it. As a result, there is no genuine issue of material fact as to whether Plaintiffs' association played a substantial role in their termination. Summary judgment for Herrin will be **GRANTED** on this claim.

#### 2. Retaliation for Participation in Lawsuit

Fifteen Plaintiffs returned to work at the Sheriff's Department in March, 1994. In an amendment to their Complaint, they allege that Sheriff Herrin has retaliated against them at work because of their participation in this lawsuit. They claim that Herrin has denied them opportunities for advancement or transfer, has condoned intimidating actions by other employees hired by him, has discriminated in the assignment of duties and

---

**5.** The actual result of the *Bryson* test or *Pickering* balancing is not important in the context of qualified immunity. The Court need only "illustrate why reasonable officers ... would not *necessarily* know that their acts violated [Plaintiffs'] allegedly 'clearly established' rights." *Hansen v. Sol-*

*denwagner,* 19 F.3d 573, 577 n. 4 (11th Cir.1994) (emphasis in original).

**6.** This Unit B case is binding precedent under *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

responsibilities, and has subjected at least one Plaintiff, Naia, to unfounded disciplinary proceedings.

■ Herrin is not entitled to qualified immunity on this claim. Assuming for purposes of summary judgment that Plaintiffs' claims are true, Herrin's actions would be a violation of clearly established constitutional law. Once the Georgia Court of Appeals held that Plaintiffs were covered by the Wayne County personnel policy and should be reinstated, Herrin was on notice that he must treat Plaintiffs in accordance with the personnel policy.

■ Plaintiffs have produced evidence of Herrin's actions sufficient to create a genuine issue of material fact for trial on their claims of retaliation. Summary judgment for Herrin on Plaintiffs' retaliation claim will be **DENIED.**

## VI. *Official Capacity Claims*

■ Plaintiffs have also asserted claims for damages resulting from their termination against Herrin in his official capacity. A plaintiff suing a state employee in his official capacity under § 1983 is actually bringing a claim against the governmental entity that the individual employee represents. *Farred v. Hicks,* 915 F.2d 1530 (11th Cir.1990). "Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation." *Id.* at 1532–33 (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) and *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)).

■ A governmental entity cannot be held liable for the individual actions of its officers under the theory of *respondeat superior. Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). Only an action by the government official "responsible for establishing final government policy respecting such activity" will trigger § 1983 liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

■ Wayne County clearly does not have a policy of terminating without a hearing or without cause Sheriff's Department employees who are covered by the Wayne County personnel policy. The Board of Commissioners of Wayne County filed suit against Sheriff Herrin to enjoin the termination of these Plaintiffs, and eventually won their reinstatement. Wayne County even paid Plaintiffs their Sheriff's Department salaries until they were reinstated. Thus, Wayne County can only be held liable under § 1983 for Plaintiffs' termination if Sheriff Herrin is responsible for establishing final governmental policy concerning Sheriff's Department employment.

In *Johnson v. Ballard,* the court held that, because the sheriff had the final authority under Georgia law to hire and fire Sheriff's Department employees, a county could be held liable for the Sheriff's decisions regarding his employees. 644 F.Supp. 333 (N.D.Ga. 1986). The county involved did not have a personnel policy adopted by the Board of Commissioners which limited the sheriff's authority to hire and fire employees.

The Georgia Court of Appeals held that Sheriff Herrin's

> authority to appoint deputies pursuant to O.C.G.A. § 15–16–23 is limited to vacancies created by the removal of employees in the manner provided under the applicable personnel or civil service system or vacancies created when employees resign or retire.

*Wayne Co. v. Herrin,* 210 Ga.App. at 753, 437 S.E.2d 793. As such, the sheriff of Wayne County is no longer responsible for establishing final Wayne County policy on the termination of Sheriff's Department employees. His decisions are "constrained by official policies" and "subject to review." *Mandel v. Doe,* 888 F.2d 783, 792 (11th Cir.1989) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988)). Sheriff Herrin's decision to terminate Plaintiffs does not trigger § 1983 liability for Wayne County. Summary judgment for Herrin will be **GRANTED** on Plaintiffs' claims against him in his official capacity.

## VII. *State Law Claims*

The Court has pendent jurisdiction over Plaintiffs' state law claims. In Count Seven of their Complaint, Plaintiffs assert that Herrin's actions against them constitute intentional infliction of emotional distress and tortious interference with their employment contracts with Wayne County. Herrin is being sued in both his individual and official capacities.

### A. Intentional Infliction of Emotional Distress

■ Under Georgia law, there are four elements of the tort of intentional infliction of emotional distress, all of which must be present in order for the plaintiff to recover:

(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe.

*Hendrix v. Phillips,* 207 Ga.App. 394, 395, 428 S.E.2d 91 (Ga.Ct.App.1993) (quoting *Bridges v. Winn–Dixie Atlanta, Inc.,* 176 Ga.App. 227, 230, 335 S.E.2d 445 (Ga.Ct.App. 1985)). Plaintiffs must show that "defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." *Nolin v. Douglas Co.,* 903 F.2d 1546, 1554 (11th Cir.1990) (quoting *Georgia Power Co. v. Johnson,* 155 Ga.App. 862, 863, 274 S.E.2d 17 (Ga.Ct.App.1980)).

■ Plaintiffs have failed to describe any conduct by Herrin that is "extreme or outrageous." They allege that their job security was threatened for several weeks during the holiday season and that Herrin "toyed" with them by making statements to the press that some deputies would be fired. Unfortunately, unfair or even wrongful termination does not equal intentional infliction of emotional distress.

In *Clark v. City of Zebulon,* a police officer was fired at Christmas after he supported the mayor's opponent in a campaign.

Clark does not contend that either [of the defendants] threatened, ridiculed or humiliated the plaintiff when they informed him of his termination. Instead, Clark bases his allegation of outrageous conduct upon the fact that he was terminated without regard to his constitutional rights and without prior notice and despite the defendant's knowledge (1) that being unemployed causes a person stress, frustration and humiliation; (2) that it was more difficult to find a job when one has been terminated from their [sic] previous job; and (3) Christmas was only two weeks away.

156 F.R.D. 684, 698 (N.D.Ga.1993). The court held as a matter of law that the defendant's conduct did not rise to the level of intentional infliction of emotional distress. *Id.*

Like the defendant in *Clark,* Herrin's actions were neither terrifying nor insulting in nature. Without more, these allegations do not support a claim for intentional infliction of emotional distress.

As discussed previously in this opinion, Herrin had a legitimate difference of opinion with the Board of Commissioners as to whether the county personnel policy applied to the Sheriff's Department. He did not act in an extreme or outrageous manner when he fired Plaintiffs, despite being told not to do so. Plaintiffs had the misfortune to be caught in the middle of this unique dispute. Their understandable distress at the situation, however, does not state a claim of intentional infliction of emotional distress absent any extreme or outrageous conduct by Herrin. Summary judgment for Herrin in both his official and individual capacities will be **GRANTED** on Plaintiffs' claim for intentional infliction of emotional distress.

### B. Tortious Interference with an Employment Contract

■ Plaintiffs also claim that in firing them from their jobs at the Sheriff's Department, Herrin tortiously interfered with their employment contracts with Wayne County. This tort consists of

[T]he intentional and non-privileged interference by a third party with existing contractual rights and relations.... Furthermore, the courts of this state have recog-

nized that such interference with a contractual right or relationship need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards performance of the duties under the contract or makes the performance more difficult or expensive.

*McDaniel v. Green,* 156 Ga.App. 549, 550, 275 S.E.2d 124 (Ga.Ct.App.1980) (citations omitted).

Herrin, in his official capacity as Sheriff of Wayne County, is not a third party to Plaintiffs' employment contracts. He was and is their employer. Therefore, Plaintiffs have no cause of action against Herrin in his official capacity for tortious interference with contractual relations. *See Suber v. Bulloch Co. Bd. of Education,* 722 F.Supp. 736, 743 (S.D.Ga.1989).

Herrin, when sued in his individual capacity, is entitled to official immunity from Plaintiffs' claims unless he acted with actual malice or actual intent to cause injury in performing his official functions. Georgia Const. Art. 1, § 2, par. 9; *Logue v. Wright,* 260 Ga. 206, 392 S.E.2d 235 (Ga.1990). There is no evidence that Herrin acted with malice or intent to injure Plaintiffs when he did not rehire them. He believed, with some justification, that he had the authority as Sheriff to hire and fire deputies, and he exercised that authority. Herrin is entitled to official immunity on Plaintiffs' claims for tortiously interfering with their employment contracts by failing to reappoint them as deputy sheriffs.

Summary judgment for Herrin in his individual and official capacities will be **GRANTED** on Plaintiffs' claim for tortious interference with an employment contract.

## VIII. *Leger's Fourth Amendment Claim*

In Count Six of Plaintiffs' Complaint, Plaintiff Leger alleges that Poppell, under the direction of Herrin, conducted a warrantless search of Leger's residence in violation of Leger's right to privacy and right to be free from unreasonable search and seizure. Herrin and Poppell assert two defenses: first, that Poppell's actions do not constitute a search for purposes of the Fourth Amendment; and second, that Herrin and Poppell are entitled to qualified immunity.

### A. Individual Liability of Poppell

#### 1. *Fourth Amendment Search*

The Fourth Amendment provides, in pertinent part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" occurs when there is some meaningful interference with an individual's possessory interests in that property.

*United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

The Supreme Court has stated that " 'at the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home.' " *Soldal v. Cook Co., Ill.,* —— U.S. ——, ——, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) (quoting *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961)). "Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." *Donovan v. Dewey,* 452 U.S. 594, 598 n. 6, 101 S.Ct. 2534, 2538 n. 6, 69 L.Ed.2d 262 (1981).

Poppell, acting as a law enforcement officer, entered Leger's apartment without a search warrant. He stresses that he was not looking for evidence of a crime or contraband. Fourth Amendment challenges to a law enforcement officer's entry into a home generally arise when the entry is made to investigate a crime. However, Poppell's entry is no less a search because his motive might have been to aid Leger rather than to implicate him in a crime.

In *Soldal,* the Supreme Court held that the towing of a mobile home from its lot in a dispossessory action under color of state law was a seizure for purposes of the Fourth Amendment. The court stated:

In our view, the reason an officer might enter a house or effectuate a seizure is wholly irrelevant to the threshold question

of whether the Amendment applies. What matters is the intrusion on the people's security from governmental interference.... it would be "anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior."

*Soldal,* —— U.S. at ——, 113 S.Ct. at 548 (quoting *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 530, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967)). Poppell infringed on Leger's reasonable expectation of privacy in his home. His action constitutes a search for purposes of the Fourth Amendment.

### 2. *Qualified Immunity*

■ Plaintiffs do not contest that Poppell was acting within the scope of his discretionary authority when he entered Leger's apartment. The first step of the objective reasonableness test for qualified immunity is satisfied. The burden is on Plaintiffs to demonstrate that Leger's conduct violated clearly established law.

Poppell could lawfully enter Leger's apartment without a search warrant if he had consent from Leger or if there were exigent circumstances. Leger did not consent to the search, and the apartment manager and owner had no authority to consent to the search. *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

Only the presence of exigent circumstances would make Poppell's search a legal one. Exigent circumstances exist when police are confronted with an emergency situation, such as when a person inside a house needs immediate aid, or when police come upon a homicide and believe other victims or the killer may be on the premises. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). "The exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for *immediate action.*" *United States v. Satterfield,* 743 F.2d 827, 844 (11th Cir.1984), *cert. denied, Welden v. United States,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) and *Allison v. United States,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985) (emphasis in original).

For purposes of ruling on qualified immunity, the question is not whether exigent circumstances actually existed. Instead, the Court must determine whether, viewing the facts in a light favorable to Leger, a reasonable officer could have believed that exigent circumstances existed.

Under Leger's version of the facts, Poppell was asked by Herrin to locate Leger on January 8, 1993, either to get Sheriff's Department equipment from him or out of concern for his well-being. Leger had missed a Sheriff's Department meeting on January 1, 1993. Poppell did not contact Leger's girlfriend, family or friends to find out where he was. He did not check Leger's personnel file, where a leave slip for December 28 through January 8 was located. He did not ask Leger's supervisor, who was Plaintiff Carter, former Sheriff Warren, or the commanders of the Drug Task Force if they knew where Leger was. Poppell went to Leger's apartment and convinced the manager and owner that they should let him into the apartment. He entered the apartment and removed some Sheriff's Department property. He later returned the items to the apartment.

A reasonable officer in Poppell's position could not have believed that exigent circumstances justifying entry into Leger's apartment existed. Leger's mere absence from home, without confirmation from any of the people who would be expected to know his whereabouts, provided no basis for a reasonable officer to suspect that a crime had been committed or that Leger was in need of immediate aid inside the apartment. Poppell is not entitled to qualified immunity on Leger's claim for the unlawful search of his apartment.

### B. Individual Liability of Herrin

■ Sheriff Herrin may be personally liable for damages to Leger under § 1983 if he knew about or ordered the search of Leger's apartment. *Baskin v. Parker,* 602 F.2d 1205 (5th Cir.1979) (finding that sheriff may be personally liable under § 1983 for search car-

ried out under illegally obtained warrant if he participated in obtaining the warrant and organizing search party).[7] Plaintiffs have introduced evidence that Herrin instructed Poppell to obtain Leger's equipment. Sheriff Herrin's knowledge of and involvement in the search is a genuine issue of material fact which must be resolved at trial.

### C. Official Liability

██ As discussed previously in this opinion, claims against public employees in their official capacities are in reality claims against the governmental entity they represent. Wayne County is liable for its employees' acts only if they were undertaken pursuant to an official policy or custom of the county.

A single act may be county policy if made by an official who is "the final policymaker with respect to the subject matter in question." *Meridith v. Grogan*, 812 F.Supp. 1223, 1231 n. 6 (N.D.Ga.1992) (quoting *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989)).

> In making the determination [of who is the final policymaker], the Court should examine the relevant positive law, including ordinances, rules and regulations, but also the relevant customs and practices having the force of law.

*Id.* (finding sheriff is final policymaker with regard to operation of jail and medical care provided to inmates).

Sheriff Herrin is the final policymaker for Sheriff's Department decisions to seek a search warrant or conduct a warrantless search. Questions of fact remain concerning whether Sheriff Herrin ordered Deputy Sheriff Poppell to conduct a search of Leger's apartment. These questions must be answered before it can be determined whether Wayne County has a custom or policy of committing illegal searches.

If such a policy exists, Sheriff Herrin as the policymaker would be liable in his official capacity, and thus Wayne County would be liable. Deputy Sheriff Poppell is not the final policymaker for the Sheriff's Department and would not be liable in his official capacity.

Summary judgment for Herrin in his individual and official capacity and for Poppell in his individual capacity will be **DENIED** on Leger's claim for violation of his rights under the Fourth Amendment. Summary judgment for Poppell in his official capacity will be **GRANTED** on Leger's claim.

### CONCLUSION

For the foregoing reasons, summary judgment for Defendant, David Herrin, in his individual and official capacity is **GRANTED** on Plaintiffs' procedural due process claims in Count I of their Complaint. Summary judgment for Herrin in his individual and official capacity is **GRANTED** on Plaintiffs' substantive due process claims in Count II of their Complaint. Summary judgment for Herrin in his individual and official capacity is **GRANTED** in part and **DENIED** in part on Plaintiffs' First Amendment claims in Count III of their Complaint. Summary judgment is **GRANTED** on Plaintiffs' political patronage claims, freedom of speech claims, and freedom of association claims based on membership in the legal defense fund; summary judgment for Herrin in his individual capacity is **DENIED** on Plaintiffs' freedom of association claims based on retaliation for participation in this lawsuit.

Summary judgment for Herrin in his individual and official capacity is **GRANTED** on Plaintiffs' state law claims in Count VII of their Complaint for intentional infliction of emotional distress and tortious interference with their employment contracts. Summary judgment for Herrin in his individual and official capacity is **DENIED** on the Fourth Amendment claim of Plaintiff, Daniel G. Leger, in Count VI of the Complaint. Summary judgment for Defendant, Kenny Poppell, on Leger's Fourth Amendment claim is **DENIED** in his individual capacity and **GRANTED** in his official capacity.

**SO ORDERED.**

---

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as circuit precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.